UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | } | |
|---|---|---|
| | } | |
| v. | } | Case No.: 4:22-cr-00266-RDP |
| | } | |
| JOSUE HERNANDEZ-SALDIVAR, | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

The Government moves to revoke the Western District of Louisiana Magistrate Judge's order for release of Defendant Josue Hernandez-Saldivar under the Bail Reform Act, 18 U.S.C. § 1345. (Doc. # 15). For the following reasons, the motion is due to be granted.

**I.    Background**

  **A.    Procedural History**

This case has an unusually complicated procedural history that may best be described as an extended game of custodial "keep away" between ICE and the DOJ.

Defendant Josue Hernandez-Saldivar is a citizen of Honduras who was ordered removed from the United States *in absentia* in 2015. (Doc. # 1 at 6). On June 24, 2022, he was driving on I-20 in St. Clair County, Alabama when Leeds Police Department ("LPD") Officer Turnbloom initiated a traffic stop for improper lane usage. (*Id*. at 3). When Officer Turnbloom explained the violation, Defendant presented a Honduran passport. (*Id*.). After talking with Defendant, Officer Turnbloom asked to search the vehicle, and Defendant consented to the search. (*Id*.). In the vehicle, Officer Turnbloom found two firearms: a Smith and Wesson Shield 9mm and a Sig Sauer .45 caliber handgun, along with ammunition. (*Id*. at 4). Defendant stated he was transporting the guns

from Memphis to Nashville for a friend (but was first stopping in Atlanta to visit his girlfriend, and that is why he was in Alabama). (*Id*. at 3). Officer Turnbloom contacted Homeland Security Investigations ("HSI") Agent Hinkle, then arrested Defendant and transported him to the LPD. (*Id*. at 4).

At the LPD, Agent Hinkle conducted records checks, which revealed Defendant was a Honduran citizen who had been previously ordered removed from the United States. (*Id*.). During an interview, Defendant said he had entered the United States about ten years ago and had been caught by ICE five times previously. (*Id*. at 5). He also gave consent for Agent Hinkle to examine his cellphone. (*Id*.). On the phone, Agent Hinkle discovered photos and videos of firearms, including a picture of Defendant holding a handgun. (*Id*.).

Defendant was later booked into the Trussville, Alabama city jail (the LPD's contract detention center), and ICE issued a detainer.[1] (*Id*. at 6). Defendant was released on June 27, 2022 after posting bond and was immediately taken into ICE custody in Birmingham. (*Id*.). He was then transported to Louisiana, and ICE began removal proceedings.[2] (Doc. # 15 at 5).

A federal complaint was filed in the Northern District of Alabama on July 6, 2022, charging Defendant with violating 18 U.S.C. § 922(g)(5), which prohibits a person unlawfully in the United States from possessing a firearm. (Doc. # 1). An arrest warrant was issued, and Defendant was transferred to U.S. Marshals' custody.

---

[1] ICE may issue a detainer when another agency has custody of an alien. A detainer advises the agency that ICE "seeks custody . . . for the purpose of arresting and removing the alien" and requests that the agency notify ICE before releasing the alien so ICE can take custody. 8 C.F.R. § 287.7.

[2] The ICE Enforcement and Removal Office in New Orleans is responsible for removal in Alabama, Arkansas, Louisiana, Mississippi, and Tennessee.

On July 22, 2022, Western District of Louisiana Magistrate Judge Carol B. Whitehurst held a detention hearing and released Defendant on a $25,000 unsecured bond.[3] (Doc. # 3). Because Defendant was subject to an immigration detainer, he was released directly into ICE custody. (*Id*.).

On July 27, 2022, a federal indictment was filed in the Northern District of Alabama for the same charges under § 922(g)(5), another arrest warrant was issued, and Defendant was transferred back to US Marshal custody. (Doc. # 4). Defendant appeared before Magistrate Judge Gray M. Borden on August 3, 2022, and Judge Borden ordered detention under 18 U.S.C. § 3142(d), which allows a defendant to be detained for up to ten days when a judicial officer determines the person is not lawfully present in the United States and "such person may flee." (Doc. # 10). The purpose of this section is to allow immigration officials to take the defendant into custody for removal proceedings. *See* § 3142(d). On August 4, 2022, ICE again took custody of Defendant. (Doc. # 14).

On August 8, 2022, the Government filed an emergency motion to stay the Western District of Louisiana Magistrate Judge's order of release. (Doc. # 15). Judge Corey L. Maze of this district granted a temporary stay on August 16, pending a full review of the motions and record.[4] (Doc. # 22). Once again, Defendant was transferred back into U.S. Marshals' custody. Now, at the end of this winding road, the matter is before this court for consideration.

---

[3] The relevant evidence provided at the detention hearing is summarized in the following section.

[4] Judge Maze ruled on the motion because this court was not available at the time the emergency motion was filed.

**B.     Detention Hearing**[5]

  **(*i*)     *Family and Community Ties***

At the detention hearing, defense counsel offered evidence regarding Defendant's family and community ties. He has been living in the Nashville, Tennessee area since he was around 12 years old. His mother, brother, and girlfriend also live in Nashville. At the time of the hearing, his girlfriend was pregnant with his child and had an August due date. Defendant also has a daughter with a different mother, and has custody of his daughter every other weekend. For employment, Defendant operates a construction company in the area.

In addition to his Nashville connections, Defendant also has ties to Honduras. He was born in Honduras and lived there for about the first 12 years of his life. His grandmother still lives in Honduras, and he keeps in touch with her and sends her money.

  **(*ii*)    *Criminal History and Record Concerning Appearance at Court Proceedings***

Defendant has failed to appear for court proceedings in the past. On August 20, 2015, at age 17, he was ordered removed from the United States *in absentia* after failing to appear for a removal hearing in Immigration Court in Memphis, Tennessee. On May 12, 2020, at age 21, he was charged with failure to appear in Millersville, Tennessee after being charged with driving with a suspended license. However, he ultimately appeared in court in that matter. He pled guilty to the traffic violation, and the failure to appear charge was dismissed.

---

[5] The following factual findings are based on the transcript of the detention hearing in the Western District of Louisiana before Magistrate Judge Whitehurst.

## II.    Legal Standard

### A.    Standard of Review of Magistrate Judge's Release Order

A district court must review *de novo* a magistrate judge's decision regarding pretrial release under the Bail Reform Act. *See United States v. Hurtado*, 779 F.2d 1467, 1480 (11th Cir. 1985). *De novo* review "requires the court to exercise independent consideration of all facts properly before it and to include written findings of fact and a written statement of the reasons for the detention" but does not require the court to conduct a *de novo* hearing unless there are unresolved factual questions. *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987); *see also United States v. King*, 849 F.2d 485, 489-91 (11th Cir. 1988).

In this case, the court has thoroughly reviewed the record and finds a *de novo* hearing is unnecessary to rule on the current motion.

### B.    Standard for Detaining a Defendant Under the Bail Reform Act

The Bail Reform Act governs pretrial release in federal criminal cases. 18 U.S.C. § 3142. The Act requires a court to detain a criminal defendant prior to trial when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'"[6] *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

"A determination that an individual is a flight risk must be supported by a preponderance of the evidence." *Id.*; *see also King*, 849 F.2d at 489; *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985). In making this decision, the court must consider four factors: (1) the nature and circumstances of the offense charged, including whether the offense involves a firearm; (2) the

---

[6] The Government does not argue that Defendant is a danger to the community.

weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The Government argues that the court should consider the ICE detainer as a relevant factor under the Bail Reform Act analysis, as Defendant's likely removal from the country creates a risk of nonappearance in future court proceedings. (Doc. # 15 at 6). Courts are divided on this question.[7] However, it is unnecessary to decide the issue in this case because, even putting aside the ICE detainer issue, the Act does not entitle Defendant to pretrial release.

This is not to say that a defendant's immigration status can be disregarded entirely. It is undoubtedly relevant to the extent it incentivizes a defendant to flee if release is granted. *See United States v. Garcia-Chagala*, No. 17-cr-133-FtM-38MRM, 2017 WL 6535198, at *2 (M.D. Fla. Dec. 21, 2017).

---

[7] Some courts have held that detention is required in this situation because, when a defendant will likely be deported if released, there are no possible conditions that could "reasonably assure the appearance of the person as required." *See, e.g.*, *United States v. Ong*, 762 F. Supp. 2d 1353, 1363 (N.D. Ga. 2010); *United States v. Campos*, No. 10-mj-6, 2010 WL 454903, at *4-5 (M.D. Ala. Feb. 10, 2010); *United States v. Lozano*, No. 9-CR-158, 2009 WL 3834081, at *5-6 (M.D. Ala. Nov. 16, 2009). On the other hand, other courts have found that the "risk of nonappearance" requires voluntary action, so a defendant cannot be detained as a flight risk just because the Government will cause his nonappearance by removing him. *See, e.g.*, *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337-38 (10th Cir. 2017); *United States v. Espinoza-Ochoa*, 371 F. Supp. 3d 1018, 1022 (M.D. Ala. 2019); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1173-74 (D. Or. 2012). A few courts have resolved this conundrum by ordering release then prohibiting ICE from removing the defendant until criminal proceedings have ended, threatening sanctions or even dismissal if ICE does not comply. *See United States v. Blas*, No. 13-178-WS, 2013 WL 5317228, at *7 (S.D. Ala. Sept. 20, 2013); *Trujillo-Alvarez*, 900 F. Supp. 2d at 1179-81. However, this heavy-handed approach raises questions about the court's authority (not to mention judicial modesty) and has been rejected by every circuit to consider the issue. *See United States v. Baltazar-Sebastian*, 990 F.3d 939, 947 (5th Cir. 2021); *United States v. Barrera-Landa*, 964 F.3d 912, 918-19 (10th Cir. 2020); *United States v. Pacheco-Poo*, 952 F.3d 950, 952-53 (8th Cir. 2020); *United States v. Lett*, 944 F.3d 467, 472-73 (2d Cir. 2019); *United States v. Soriano Nunez*, 928 F.3d 240, 246-47 (3d Cir. 2019); *Vasquez-Benitez*, 919 F.3d at 553-54; *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018).

On the other hand, some courts reason that an ICE detainer actually mitigates any flight risk because, short of a jailbreak, the defendant realistically cannot flee while in ICE custody. *See United States v. Lozano*, No. 9-CR-158, 2009 WL 3834081, at *3 (M.D. Ala. Nov. 16, 2009). But this analysis is faulty because it assumes that ICE can and will continue to detain the defendant, which is not always the case. During pending removal proceedings, ICE detention is permissive, not mandatory. *See* 8 U.S.C. § 1226(a). And, while ICE must detain an alien who is subject to a final order of removal, ICE's authority to detain the alien beyond the 90-day removal period is limited. *See* 8 U.S.C. § 1231(a)(1), (2), (6); *Zadvydas v. Davis*, 533 U.S. 678, 697-99 (2001). Thus, there is no guarantee that Defendant will remain in ICE custody if granted pretrial release, and speculation about an executive agency's future actions have no place in the Bail Reform Act analysis.

## IV.   Analysis

After reviewing the record evidence and assessing the relevant statutory factors, the court finds, by a preponderance of the evidence, that pretrial release is not appropriate because "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required."[8] 18 U.S.C. § 3142(e)(1).

### A.   Nature and Circumstances of the Charged Offense

This factor weighs in favor of detention because the charged offense involves the possession of firearms. Additionally, Defendant was arrested while transporting those firearms across state lines, indicating he has connections in jurisdictions outside this district. Moreover, if convicted, he faces up to 15 years imprisonment, as well as adverse immigration consequences, which creates a powerful incentive for him to flee.

---

[8] This ruling is consistent with the Pretrial Services Report, which recommended detention.

### B. Weight of the Evidence

The evidence against Defendant is strong. He was not lawfully present in the United States because he remained in the country despite the order of removal in 2015. He told an HSI officer that he had previously been caught by ICE five different times, which suggests he was aware of his immigration status. He admitted to transporting guns in his car and had photos of guns on his phone, including one of himself holding a handgun. Thus, it is likely he will be convicted under § 922(g)(5), and therefore this factor favors detention.

### C. History and Characteristics of the Person

Further, Defendant's past record of non-appearance at court proceedings is at least concerning. His failure to appear for immigration proceedings, along with his statements about being previously "caught" by ICE multiple times, indicates a strong motivation to elude legal authorities and avoid adverse immigration consequences. Although Defendant does have family in the Nashville area, none have been offered as suitable third-party custodians. These aspects of Defendant's personal history may (or may not) weigh in favor of pretrial release. At a minimum, however, they do not counter-balance the other factors discussed above.

## V. Conclusion

For these reasons, the Government's motion to revoke the magistrate judge's order of release (Doc. # 15) is due to be granted. A corresponding order will be entered.

**DONE** and **ORDERED** this September 26, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE